Filed 2/18/21  P. v. Cox CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STANLEY EARL COX,<br><br>    Defendant and Appellant. | D075838<br><br><br>(Super. Ct. No. SCD277226) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael S. Groch, Judge.  Affirmed in part; reversed in part and remanded with directions.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez, and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Stanley Earl Cox of three counts of unlawfully selling or furnishing a controlled substance, i.e., cocaine base.  (Health & Saf. Code,

§ 11352, subd. (a).)  In bifurcated proceedings, the trial court found that Cox had suffered a strike prior (Pen. Code, § 667, subd. (d)), more than two probation denial priors (*id.*, § 1203, subd. (e)(4)), and six prison priors (former Pen. Code, § 667.5, subd. (b)).  At sentencing, the court dismissed five of Cox's six prison priors.  It also dismissed the strike prior in part, as it applied to the second and third counts of selling or furnishing a controlled substance.  It imposed an aggregate sentence of seven years in prison, including a one-year enhancement for the one remaining prison prior.

Cox appeals.  He contends (1) the trial court erred by excluding evidence that the investigating detectives had a motive to lie about Cox's guilt (and this error violated his constitutional rights); (2) his one-year prison prior enhancement must be stricken based on a newly enacted statute, Senate Bill No. 136 (Stats. 2019, ch. 590, § 1); and (3) the court erred by imposing various fines and fees without considering Cox's ability to pay them.  Cox additionally requests that we review the trial court's in camera assessment of peace officer personnel records for error.  (See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).)

We conclude Cox has not shown any evidentiary or constitutional error and the trial court did not err in its assessment of the personnel records.  But we agree Senate Bill No. 136 applies.  We therefore vacate Cox's sentence and remand for resentencing.  On remand, Cox may also raise an objection based on his alleged inability to pay.  We need not consider the merits of that contention here.

## FACTS

For purposes of this section, we state the evidence in the light most favorable to the judgment.  (See *People v. Osband* (1996) 13 Cal.4th 622, 690;

2

*People v. Dawkins* (2014) 230 Cal.App.4th 991, 994.) Additional facts will be discussed where relevant in the following section.

On May 23, 2018, several detectives, including Ron Newquist and Joseph Harper, gathered together to execute an undercover operation targeting Cox. Newquist believed that Cox was involved in selling illegal drugs. He also believed that Cox might have information that could assist the police in their investigation into another individual. Newquist asked Harper to go undercover and attempt to buy illegal drugs from Cox.

Harper went to the area of 13th Street and Market Street in San Diego. Cox was there, near several other people. Harper walked past Cox and went into a convenience store. He bought some potato chips to use as a prop and approached a woman nearby. He spoke to her about buying cigarettes and, eventually, drugs. Cox overheard Harper and told him "he could help [Harper] out." Harper purchased a pack of cigarettes from Cox and continued to talk to the woman about wanting to buy some drugs.

After a little while, Harper approached Cox and asked him if " 'anything [was] going on,' " which is a common way of asking about drugs. Cox asked Harper what he was looking for and suggested "crystal," i.e., methamphetamines. Harper responded that he wanted " 'white' " or " 'hard,' " which is slang for cocaine base. After questioning Harper, Cox told him he could sell Harper " 'rock' " cocaine for $30. They walked a short distance, and Cox pulled a clear plastic bag from his waistband. It appeared to contain several small chunks of rock cocaine. Harper gave Cox $30, and Cox handed him a small piece of rock cocaine. Cox told Harper his cocaine was "good stuff," "high quality," and Harper "could come back and see him." Harper walked away, and after several blocks he was picked up by another police officer. At police headquarters, Harper weighed the rock cocaine. It

3

weighed four-tenths of a gram.  The police officers did not arrest Cox at that time because "[i]t was an ongoing investigation, and it was not our plan to arrest him that day."[1]

The next day, Newquist saw Cox in the same area.  He called Harper and other detectives back to the area to conduct another undercover operation.  They wanted to try to "purchase or to attempt to purchase cocaine base" from Cox again.  Harper went up to Cox and started a conversation.  He told Cox he liked the cocaine base he had purchased the day before and wanted more.  Harper said he wanted "a really fat rock" from Cox.  Cox responded, " 'Sure, no problem,' " and again they walked a short distance away.  Cox pulled a clear plastic bag from his waistband, selected a piece of rock cocaine, took $30 from Harper, and gave Harper the cocaine.  Cox told Harper "he was there all the time" and Harper could come back as long as he "was cool" and "wasn't the police."  Harper said he would definitely be back. He left the area and was picked up again several blocks away.  This piece of rock cocaine weighed four-tenths of a gram as well.

Two weeks later, the detectives assembled to try to purchase cocaine from Cox a third time.  Cox was in the same area as before.  When Harper approached him, Cox said he did not have his drugs with him.  They walked to a nearby building.  Cox called up to someone but did not receive any response.  Cox tried to get some cocaine but eventually told Harper to come back in an hour.  An hour later, Harper came back and spoke to Cox.  Cox said he did not have any cocaine but he could get some.  Harper gave Cox $30, and Cox told another man to give Harper some cocaine.  The man

---

1    Newquist explained at trial that police may wait to arrest a suspect to "build[] out a bigger case if it's part of a bigger project" or to "identify[] coconspirators," among other reasons.

complied, and Harper walked away with the cocaine. Harper wore a recording device, but it malfunctioned and did not record anything.

A week after the third undercover buy, Newquist and Harper went to the area of 13th Street and Market Street to arrest Cox. When they saw Cox, they called for a uniformed patrol officer to help. After completing the arrest, they searched Cox's person and his car. Cox was carrying $488 in cash. In his car, officers found $4,945 in cash, three cell phones, and a pay-and-owe ledger.

At trial, Cox's counsel cross-examined Newquist and Harper on the use of confidential informants and the benefits that might accrue to someone facing criminal charges if they cooperated with police. Newquist agreed that criminal charges provide leverage that police can use to encourage cooperation. Newquist also agreed that he wanted to use Cox as a confidential informant. He explained, "I would have liked to have gained information from him as part of a larger project." Newquist agreed that the undercover buys were a "calculated, orchestrated operation." He "had to get authorization from other people above [him] from both the federal side and the state side, the District Attorney's office, and put together an operation plan." After Cox's arrest, Newquist and Harper told him that they were conducting an investigation of another person and they wanted Cox's help. They told Cox they had set up the undercover buy operation to work with Cox on a specific job.

Newquist testified that obtaining Cox's assistance was not the "sole motivation" for his investigation; he was also motivated by Cox's own illegal activities. Harper had the same motivations.

5

## DISCUSSION

### I

### *Evidence of Cox's Police Interview*

Cox argues the court erred as a matter of state law, and violated his constitutional rights, by excluding certain evidence relating to a post-arrest interview Harper and Newquist conducted with Cox. At trial, Cox's primary defense was that Newquist and Harper had fabricated the evidence against him in order to pressure him to cooperate in their investigation of another person. The court addressed a series of disputes over what evidence Cox could present in support of that defense. As relevant here, Cox attempted to introduce excerpts from a video recording of Cox's post-arrest police interview, in which Newquist and Harper told Cox they were interested in obtaining his cooperation in another investigation.[2] They told Cox the undercover buy operation was set up to help secure that cooperation.

The trial court excluded evidence of the video recording itself, but it allowed Cox to question the detectives regarding their motives. It explained, "Well, the relevant questions of the witness live on the stand would be, Detective, you were really there investigating somebody else that's your target, not my client, correct? And my client, you arrested him because you thought maybe you could get information from him that would help you in your target, correct? [¶] Those sorts of questions hav[e] nothing to do with the interview of your client. [¶] So unless the detective says something that's inconsistent with what he said on the recorded tape, what he said on the tape is irrelevant hearsay." It continued, "We don't go to the statement unless it's a prior inconsistent statement. It's not—state of mind alone is not

---

[2]     This court has received and reviewed the video recording and a transcript of the post-arrest police interview at issue in this appeal.

going to survive [an Evidence Code section] 352 analysis." The court explained that, absent an inconsistent statement, the videotaped record had minimal probative value, was cumulative, and could potentially open up an inquiry into a variety of extraneous issues.

Later, the court allowed Cox to ask the detectives about statements they made to Cox, but it continued to exclude the videotaped record itself. It stated, "You may inquire of the witness's state of mind and their motives, all the relevant areas that you have articulated [as] necessary to your client's defense. You can ask the witness, 'Were you targeting my client because you were actually targeting some other person and you wanted to use my client to get leverage?' Isn't this why you contacted him? This wasn't a random contact. You had a purpose, a plan. All of the things that you want to establish, all fair game at that level of generality. [¶] You can ask, 'In fact, didn't you tell my client that you weren't really there to see him you were there to target someone else?' Fine. [¶] But getting into playing the prior statement requires a further foundation in terms of the [Evidence Code section] 352 analysis. Unless you're impeaching the witness, that statement is not going to be able to be introduced and used and consume the trial time and start to create other issues." The court later sustained hearsay objections to certain questions about what Newquist and Harper told Cox during the interview. The evidence that was admitted and heard by the jury has been described above.

Cox contends the trial court erred by excluding evidence of Cox's videotaped interview with Newquist and Harper, which Cox argues was relevant to their credibility. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create

7

substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) " ' "[T]he latitude section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." ' " (*People v. Harris* (2008) 43 Cal.4th 1269, 1291 (*Harris*).) "A trial court's discretionary ruling under this statute ' "must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Williams* (2008) 43 Cal.4th 584, 634-635.)

Cox has not shown the trial court abused its discretion under Evidence Code section 352. The trial court could reasonably find that the videotaped evidence was cumulative of the detectives' live testimony at trial. The detectives testified that they set up the undercover operation in part because they wanted to work with Cox on another investigation, and they confirmed that they told Cox about this motivation during his interview. The trial court could also reasonably find that the admission of the videotape had the potential to introduce collateral issues regarding the circumstances and content of Cox's police interview.

Cox argues, "The evidence of the interview was not collateral, nor cumulative in any way, such that it would necessitate an undue consumption of time." This conclusory assertion is insufficient to show the court erred. Cox also argues, "The video interview gave an entirely different motivation for the detectives behind their actions. The motive for the approaches to this homeless person by Detective Harper was to recruit him. The testimony was clear that a state prison sentence provided leverage to make this recruitment a reality." The record does not support Cox's claim that the videotape showed

8

"an entirely different motivation" for the detectives' actions. Their testimony at trial confirmed that their motivation was, in part, to recruit Cox and enlist his help in another investigation. They admitted they set up the undercover operation for this purpose. Their testimony was consistent with the videotaped interview. Cox has not shown the trial court abused its discretion under Evidence Code section 352 by excluding it.

For similar reasons, Cox has not shown any constitutional violation. Our Supreme Court has " 'repeatedly held that "not every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance." ' " (*Harris*, *supra*, 43 Cal.4th at p. 1292; accord, *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) "While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." (*Holmes v. South Carolina* (2006) 547 U.S. 319, 326.)While the complete exclusion of evidence supporting a defense may violate the Constitution, Cox has not shown the excluded evidence here was "so vital to the defense that due process principles required its admission." (*People v. Cornwell* (2005) 37 Cal.4th 50, 82; see *People v. Babbitt* (1988) 45 Cal.3d 660, 684.) Cox was granted wide latitude to cross-examine the detectives regarding their motivations, including whether the undercover operation was set up to secure Cox's cooperation. As our Supreme Court explained, in an analogous context, the excluded evidence "would have

9

introduced a variety of collateral credibility issues, and would not 'have produced "a significantly different impression of [the witness's] credibility." ' " (*Harris*, *supra*, 43 Cal.4th at p. 1292.) The trial court did not violate Cox's constitutional rights by excluding evidence of his videotaped interview with police.

## II

### *Senate Bill No. 136*

At the time of Cox's sentencing, Penal Code section 667.5, subdivision (b) provided for a one-year enhancement for each prior separate prison term, unless the defendant remained free from both prison custody and the commission of a new felony for a five-year period after discharge. (Former Pen. Code, § 667.5, subd. (b); *People v. Buycks* (2018) 5 Cal.5th 857, 889 (*Buycks*).) During this appeal, the Legislature enacted Senate Bill No. 136, which amended the statute so that "a one-year prior prison term enhancement will only apply if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b)." (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341; see Pen. Code, § 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1.)

Because the judgment against Cox is not yet final, the amended statute applies here. (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 772 (*Gastelum*) [collecting cases].) And, because none of Cox's prior prison terms were for sexually violent offenses, the one-year prior prison term enhancement can no longer be imposed on him.

As a general rule, when an error affects part of a sentence, we must remand for a full resentencing on all counts and allegations. (*Buycks*, *supra*, 5 Cal.5th at p. 893.) We have identified no applicable exception to this

10

general rule.  (Cf. *Gastelum*, *supra*, 45 Cal.App.5th at p. 773.)  We therefore vacate Cox's sentence and remand for a full resentencing.

## III

### *Ability to Pay Fines and Fees*

Cox contends the trial court erred by imposing a $5,000 restitution fine (Pen. Code, § 1202.4, subd. (b)), a $615 drug program fee (Health & Saf. Code, § 11372.7), a $205 lab analysis fee (*id.*, § 11372.5), a $90 court operations assessment (Pen. Code, § 1465.8), a $154 criminal justice administration fee (Gov. Code, § 29550 et seq.), and a $120 court facilities assessment (*id.*, § 70373) without first considering his ability to pay them.  The court also imposed and stayed a $5,000 parole revocation fine.  (Pen. Code, § 1202.45.)

Cox relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which invoked due process principles to require an ability to pay hearing before a trial court may impose certain mandatory fees.  (*Id.* at p. 1164.)  It also held that "although Penal Code section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine."  (*Ibid.*)

Courts have criticized *Dueñas* for its reliance on due process principles, in whole or in part.  (See, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted Nov. 26, 2019, S258946; *People v. Kopp* (2019) 38 Cal.App.5th 47, 94, 96 (*Kopp*), review granted Nov. 13, 2019, S257844.)  In *Kopp*, our Supreme Court has articulated the following issues for review:  "(1) Must a court consider a defendant's ability to pay before imposing or executing fines,

11

fees, and assessments? (2) If so, which party bears the burden of proof regarding the defendant's inability to pay?"

Given the procedural posture of this case—where the matter must be remanded to the trial court for resentencing—and the fact that our Supreme Court will resolve the split in authority as to whether *Dueñas* was correctly decided, we conclude Cox may request an ability to pay hearing on remand.[3]

We express no opinion on the merits of Cox's objection to the restitution fine and fees, other than to note that Cox "bears the burden of proving an inability to pay" (*Kopp*, *supra*, 38 Cal.App.5th at p. 96, review granted; accord, *People v. Santos* (2019) 38 Cal.App.5th 923, 934; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490), and "the trial court should not limit itself to considering only whether [Cox has] the ability to pay at the time of the sentencing hearing." (*Kopp*, at p. 96; see *People v. Staley* (1992) 10 Cal.App.4th 782, 783 [" '[A]bility to pay' . . . does not require existing employment or cash on hand. Rather, a determination of ability to pay may be made based on the person's *ability to earn* where the person has no physical, mental or emotional impediment which precludes the person from finding and maintaining employment once his or her sentence is completed."]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [future prison wages support ability to pay determination]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140 [same].)

---

3    Cox did not object to the restitution fine and fees in the trial court, even though *Dueñas* had been decided several months prior to his sentencing hearing. The Attorney General therefore argues that Cox has forfeited his claim of error. Because this case is being remanded for the reasons stated, we decline to hold that Cox's claim is forfeited. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [reviewing courts have discretion to excuse forfeiture].)

IV

*Peace Officer Personnel Records*

Prior to trial, Cox moved for the discovery of information in the personnel records of Newquist and Harper, including allegations relating to false statements and fabricating evidence. (See *Pitchess*, *supra*, 11 Cal.3d 531.) The trial court conducted an in camera hearing to review their personnel records and found no discoverable information to disclose to Cox.

Cox requests that we review the in camera proceedings to determine whether any information was incorrectly withheld from the personnel records. The Attorney General does not oppose the request.

"When a trial court concludes a defendant's *Pitchess* motion shows good cause for discovery of relevant evidence contained in a law enforcement officer's personnel files, the custodian of the records is obligated to bring to the trial court all 'potentially relevant' documents to permit the trial court to examine them for itself." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229 (*Mooc*).) "Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review. But if the custodian has any doubt whether a particular document is relevant, he or she should present it to the trial court." (*Id.* at p. 1229.) "The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion. A court reporter should be present to document the custodian's statements, as well as any questions the trial court may wish to ask the custodian regarding the completeness of the record." (*Ibid.*)

13

"The trial court should then make a record of what documents it examined before ruling on the *Pitchess* motion. Such a record will permit future appellate review. If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined. Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision, whether to disclose or not to disclose, would be nonexistent." (*Mooc, supra*, 26 Cal.4th at p. 1229.)

"A trial court's decision on the discoverability of material in police personnel files is reviewable under an abuse of discretion standard." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220.) "Trial courts are granted wide discretion when ruling on motions to discover police officer personnel records." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

We have reviewed the sealed record of the trial court's in camera hearing and the personnel records produced at the hearing. Based on that review, we conclude the trial court conducted the proper inquiry into the discoverability of information in the detectives' personnel records, made an adequate record for our review, and did not abuse its discretion by finding there was no discoverable information.

## DISPOSITION

Cox's sentence is vacated and the matter is remanded for resentencing. On remand, Cox may raise an objection to the fines and fees imposed by the

14

court based on his ability to pay.  In all other respects, the judgment is affirmed.

GUERRERO, J.

WE CONCUR:


HALLER, Acting P. J.


AARON, J.